IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEILA R. TAYLOR, | |
| Plaintiff, | Case No. 1:08 CV 05588 |
| v. | Judge Lefkow |
| | Magistrate Judge Keys |
| ARON FEINBERG, SUE FEINBERG, MICHAEL FEINBERG, MARCY FEINBERG, MICHELE TRULL and ETHAN TRULL, | |
| Defendants. | |

**MICHELE AND ETHAN TRULL'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants, Michele F. Trull and Ethan E. Trull, by counsel, submit the following Memorandum in Support of Their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

**INTRODUCTION**

In the Amended Complaint, Leila Taylor ("Leila") alleges that sometime prior to October 1, 2003, Michael Feinberg ("Michael") misappropriated funds from bank accounts that were held jointly among Erla Feinberg, Leila Taylor and Michael Feinberg. (Complaint at ¶ 12; a true and correct copy of the Amended Complaint is attached to the Trull's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) as Exhibit A). Leila further alleges that Michael's misappropriation included improper cash and other asset withdrawals and use of funds from the joint accounts to pay personal expenses. (Complaint at ¶ 14).

Leila does not allege that Michele or Ethan Trull (her husband) misappropriated any money. The facts alleged against Michele and Ethan Trull (the "Trulls") can be found in Paragraphs 16 through 23 of her Complaint, where Leila claims a conspiracy existed among Michael Feinberg, the Trulls and the other defendants. (Complaint at ¶¶ 16 – 23). According to Leila, the defendants' alleged conspiracy began after October 1, 2003, and "culminated in the filing of a lawsuit by Michele and Aron [Michele's brother] against Leila Taylor and Marshall Taylor (Leila's husband, together the "Taylors") on June 25, 2004 in the Circuit Court of Cook County (the "Cook County Lawsuit"). (Complaint at ¶ 17).

Of course, there is nothing unlawful about Michele and her brother filing a lawsuit in the Cook County Circuit Court against the Taylors.[1] In fact, the basis for this lawsuit against the Trulls is not because Michele sued the Taylors. Instead, the purported basis for this lawsuit, at least as it pertains to the Trulls, is that Michele did not also name her father, Michael Feinberg, as a defendant in the Cook County Lawsuit. According to Leila's Amended Complaint, by suing the Taylors but not suing her father, Michele somehow concealed and diverted attention from Michael Feinberg's misappropriation. (Complaint at ¶ 16).

The dispute underlying the Amended Complaint is nothing new. This dispute has been pending in the Circuit Court of Cook County for approximately four years, and actually consists of three matters that have been consolidated. The first case to be filed was the probate estate of Erla M. Feinberg, who passed away on October 1, 2003 at the age of ninety (<u>Estate of Erla</u>

---

[1] Although Michele's brother was initially a plaintiff in the Cook County Lawsuit, it is unclear at this time whether he has voluntarily dismissed his claims.

Feinberg, Circuit Court of Cook County, Probate Division, Case No. 04 P 5093).[2] Sometime after Erla's death, in early 2004, Michele Trull and her husband Ethan Trull learned that the Taylors had misappropriated roughly two million dollars ($2,000,000) from Erla Feinberg and Erla's estate. This discovery prompted Michele, in June 2004, to file a lawsuit in the Law Division of the Circuit Court of Cook County against the Taylors seeking recovery of stolen money and real property (Trull, et. al. v. Taylor, et. al., Circuit Court of Cook County, Law Division, Case No. 04 L 007195). There is no question that at the time Michele filed the Law Division suit against the Taylors, both she and her husband Ethan Trull were aware that Michele's father Michael Feinberg also had stolen money from Erla Feinberg and her estate – as much as about $260,000 or more. Nevertheless, not surprisingly, at that time Michele chose not to sue her father and instead brought her claims only against the Taylors.

While her lawsuit against the Taylors was pending and discovery was ongoing, Michele learned that her father's wrongdoing was much more extensive than she had previously thought. Accordingly in September 2005, Michele sought leave to amend her complaint to include her father Michael Feinberg. Michele's amended complaint alleges that Michael Feinberg independently misappropriated more than one million dollars ($1,000,000).

Michele also alleges that Michael Feinberg conspired with the Taylors to evade Federal Estate Taxes and to deprive Michele of her interest in the Feinberg Estates (which Michael admitted in his sworn answer to Michele's Second Amended Complaint). In her complaint and subsequent pleadings, Michele claims that the Taylors and Michael Feinberg jointly and

---

[2] Indeed, for years Leila Taylor maintained a counterclaim in the Estate of Erla Feinberg against Michael Feinberg for the same misappropriations that she alleges here. Leila recently voluntarily dismissed those claims, on the eve of trial, and re-filed in Federal Court.

severally stole more than three million dollars ($3,000,000). Michele also alleges facts showing that Marshall Taylor committed multiple criminal violations of the Illinois Consumer Fraud Act (by drafting documents modifying Erla Feinberg's estate plan), that Michael Feinberg committed mail and wire fraud (by negotiating checks and stock certificates that were issued to his dead father Max Feinberg decades after Max died), and that all of the Taylors and Michael Feinberg engaged in financial exploitation of the elderly against Erla Feinberg, as that crime is defined in the Illinois statutes.

Also, during the course of proceedings in the lawsuits, it became apparent that the Taylors and Michael Feinberg were aware of and had been hoarding assets belonging to Max Feinberg, who had passed away much earlier on December 4, 1986. The probate estate of Max Feinberg was opened in 2005 to properly administer those assets (Estate of Max Feinberg, Circuit Court of Cook County, Probate Division, Case No. 05 P 0173). The three cases have been consolidated before Judge Coleman of the Circuit Court of Cook County, Probate Division (collectively, the "State Court Actions").

Now, in this lawsuit, Leila Taylor alleges that the Trulls conspired with Michael Feinberg – not to misappropriate any money – but to conceal Michael's misappropriation that had already taken place and to divert attention from him. Leila claims that sometime after Erla's death on October 1, 2003, Michele and Ethan Trull conspired with Michael Feinberg (and the other defendants) to "both conceal and divert attention from Michael's Misappropriation and breaches of fiduciary duty by instead targeting Leila and her husband Marshall Taylor ("Marshall") as to alleged misappropriation by Marshall and Leila (collectively the "Taylor's" [sic])." (Amended Complaint at ¶ 16). In simpler terms, Leila is complaining that when Michele first filed her

4

lawsuit, she sued only the Taylors and did not sue her father Michael Feinberg. Even though about a year later, Michele amended her complaint to add Michael as a defendant, Leila Taylor alleges that she was damaged because Michele did not include Michael in the initial lawsuit.

Leila does not allege any reason why Michele owed a duty to "disclose" Michael's misappropriations to Leila. Nor does Leila allege any reason why Michele owed a duty to her to "focus" Leila's attention on Michael. Indeed, Leila does not allege that Michele owed her any duty whatsoever or any other plausible reason why Michele was legally obligated to sue her father.

## ARGUMENT

There was nothing unlawful about Michele suing the Taylors in the State Court Actions. Indeed, the Taylors have repeatedly unsuccessfully sought to have Michele's complaint dismissed. So the only questions here are whether Michele committed a tort against Leila Taylor by not initially suing Michael Feinberg[3] or whether the Trulls committed a tort by not affirmatively disclosing Michael's wrongdoing to Leila. Of course, in order for Michele's decision to not (initially) sue Michael Feinberg to be a tort, Leila would first have to establish that Michele owed a duty to Leila to sue Michael. Likewise, in order for the Trulls' alleged decision not to disclose Michael Feinberg's misappropriations to be a tort, the Taylors must first allege facts showing that Michele and Ethan owed Leila a duty to disclose Michael's actions to her. No such facts have been alleged and the Trulls did not owe any such duties to Leila.

In paragraphs 20 through 23 of her complaint, Leila Taylor tries to paint as lurid a picture as possible about the events leading up to the "culmination" of the alleged conspiracy, namely

---

[3] Ethan Trull is not a party to the State Court Actions and does not have standing to sue Michael for anything.

the filing of a complaint by Michele. (Complaint at ¶¶ 20-23). Because the "culminating" event – the filing of a lawsuit – is not itself a tortious act, the details of the Trulls' activities leading up to that point are irrelevant. Even if they were relevant, assuming for the sake of this motion that they are all true, they still do not state any legally cognizable cause of action because none of the alleged acts are themselves inherently unlawful. Essentially, the alleged "conspiracy" consisted of the following:

- The defendants met to discuss possible causes of action against the Taylors;

- The defendants discussed how to best deal with the counterclaims that they could expect to be presented against Michael by the Taylors;

- The defendants strategized about how to recover the most money for the Feinberg Estates (and themselves) while exposing Michael Feinberg to as little liability as possible;

- The defendants agreed that the best way to recover money for the estates while minimizing Michael's exposure would be for Michele and Aron to file a lawsuit;

- Ethan Trull procured legal services for Michele, Aron and Michael Feinberg, and was able to obtain some of those services for free;

- Michele (at least initially) and Aron elected not to pursue Michael Feinberg's misappropriations.

Of course, all of this adds up to exactly nothing, because none of these are "unlawful acts." As a plaintiff, Michele was free to sue or not sue any viable defendant. Michele's choice as to who to pursue could have been based upon the ability of a particular defendant to pay a judgment. Or

Michele could have chosen who to sue based upon the proof at hand and her assessment of who would be easiest to take to judgment. Or Michele could have chosen simply based upon which defendant she felt more closely aligned. Or on a whim. Or, as in this case, Michele could simply choose not to sue her father. That is not a tort.

I. **THE TRULLS DID NOT OWE LEILA TAYLOR ANY DUTY TO DISCLOSE**

Civil conspiracy has been defined by the Illinois Supreme Court as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglass Corporation*, 188 Il.2d 102, 720 N.E.2d 242, 258 (1999). In this case, Leila can't possibly be complaining about the defendants accomplishing a lawful purpose by unlawful means, because the means consisted of Michele filing a lawsuit – an undeniably lawful act. Likewise, there's nothing inherently unlawful about the Trulls' alleged actions leading up to Michele filing her complaint. For example, it was not illegal for Michele to meet with her father and discuss strategy. It was not illegal for Michele to decide, for a while, to not pursue Michael Feinberg's wrong doing. It was not illegal for Ethan Trull to procure free legal services for the defendants. Because Leila does not allege any inherently illegal acts by the Trulls, she must be complaining that the defendants conspired to accomplish an unlawful purpose.

According to Leila, that unlawful purpose was to "conceal and divert attention" from Michael Feinberg's misappropriations and breaches of fiduciary duty to Leila. (Complaint at ¶ 16). But even accepting for the purpose of this Motion that it is true that the Trulls did conceal

or distract Leila Taylor's attention from Michael, those actions would be unlawful only if the Trulls owed Leila a duty to disclose. They did not.

Illinois law is well settled that "in order to prove fraud by the intentional concealment of a material fact [here, the concealment of Michael Feinberg's wrong doing], it is necessary to show the existence of a special or fiduciary relationship which would raise a duty to speak." *Illinois Non-Profit Risk Management Association v. Human service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 884 N.E.2d 700, 710 (4th Dist. 2008); *Lewis v. Lead Industries Association, Inc.*, 342 Ill. App. 3d 95, 793 N.E.2d 869, 876 (1st Dist. 2003); *Magna Bank of Madison County v. Jameson*, 237 Ill. App. 3d 614, 604 N.E.2d 541 (5th Dist. 1992). In this case, Leila Taylor does not allege any relationship whatsoever between herself and the Trulls that would raise a duty to speak. Without any special or fiduciary relationship, which does not exist here, the Trulls did not owe any duty to Leila and it was not unlawful (assuming *arguendo* that it is true) for them to remain silent concerning Michael Feinberg's misappropriation.

Without alleging any specific facts, Leila Taylor also claims that the Trulls "enabled" Michael Feinberg's misappropriation. (Complaint at ¶ 41). This naked allegation is not sufficient to sustain any cause of action against the Trulls. It is also, frankly, impossible because according to Leila's Complaint, all of Michael Feinberg's alleged misappropriations took place before October 1, 2003, and the defendants' alleged conspiracy began sometime thereafter. (Complaint at ¶¶ 11-12, 16). It simply does not make any sense for Leila to allege that the Trulls "enabled" something that had already complete.

It is also unavailing to Leila that she casts some of her claims under the heading "Unjust Enrichment." (Complaint at ¶¶ 45 – 47). The term unjust enrichment is not descriptive of

8

conduct which, standing alone, will justify an action for recovery. *Lewis*, 793 N.E.2d at 877. "In order for a cause of action for unjust enrichment to exist, there must be some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Lewis*, 793 N.E.2d at 877. In this case, Leila Taylor has not alleged any basis whatsoever for a duty on the part of the Trulls to act for her benefit.

## CONCLUSION

Even accepting every allegation in the Amended Complaint as true, Leila still does not state any cause of action against the Trulls. None of the alleged actions by the Trulls leading up to Michele filing her lawsuit against the Taylors was inherently unlawful and Michele did not commit any tort by suing Leila Taylor. The Trulls did not commit any tort by remaining silent about Michael's wrong doing because they did not owe Leila any duty to disclose.[4] The Amended Complaint against the Trulls does not state any legally cognizable cause of action against the Trulls and must be dismissed pursuant to federal Rule of Civil Procedure 12(b)(6).

          Respectfully submitted,
          Michele and Ethan Trull


          /s/ Robin Drey Maher
          One of their attorneys

James R. Carey (06200974)
Robin Drey Maher (6283440)
Levin, Schreder & Carey, Ltd.
120 N. LaSalle St., 38th Fl.
Chicago, IL 60602
(312) 332-6300

---

[4] In fact, at the time, the Trulls were anything but silent about Michael's wrong-doing. But for the purpose of this Motion, we assume as Leila alleges that they disclosed nothing.