IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEILA R. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08-CV-5588 |
| v. ) | |
| ) | Hon. Joan H. Lefkow |
| MICHAEL FEINBERG and MARCY ) | |
| FEINBERG, ) | |
| ) | |
| Defendants. ) | |

### OPINION AND ORDER

Plaintiff Leila R. Taylor ("Leila") filed a third amended complaint against Michael Feinberg ("Michael") and Marcy Feinberg ("Marcy") arising from Michael's alleged misappropriation of assets belonging to the estates of Leila's and Michael's parents, Erla and Max Feinberg (respectively, "Erla" and "Max"), as well as assets belonging to Leila as a joint account holder with Michael.[1] The claims against Michael are for breach of fiduciary duty (Count I), constructive fraud (Count II), fraudulent concealment (Count III), unjust enrichment (Count IV), conversion (Count V), equitable accounting (Count VI), and violation of the Illinois Joint Tenancy Act ("JTA"), 765 Ill. Comp. Stat. 1005/4 (Count VII). The claims against Marcy are for aiding and abetting Michael's alleged misconduct (Count VIII) and unjust enrichment (Count IX). Before this court are Michael's and Marcy's motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Michael's motion [#96] is denied, and Marcy's motion [#97] is granted in part and denied in part.

---

[1] In its September 28, 2009 Opinion & Order (Dkt. No. 44) (hereinafter "September 28, 2009 opinion"), the court determined that it has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds $75,000.

## BACKGROUND[2]

Erla and Max, the parents of Michael and Leila, were residents of Chicago, Illinois and had amassed considerable wealth before their deaths. Third Am. Compl. ¶¶ 6–7. Max died on December 4, 1986, Erla on October 21, 2003. *Id.* During the nearly twenty years Erla lived after Max's death, she remained in Chicago, near Michael and his children. *Id.* ¶ 7. Leila, at all relevant times, lived in California with her husband, Marshall Taylor ("Marshall"). *Id.* ¶¶ 1, 7, 21. Michael had power of attorney for Erla starting in June 1994 and tended to her financial affairs until her death. *Id.* ¶¶ 2, 7.

While Erla was alive, she held joint bank accounts with her two children. *Id.* ¶ 9. All statements for the joint accounts were sent to Michael. *Id.* ¶ 11. Leila alleges that from early 1987 to December 18, 2004, Michael misappropriated at least $450,000 for his own benefit from these accounts. *Id.* ¶¶ 9–10. Leila alleges that the misappropriations include, among others, the following transactions that Michael made from joint accounts: (1) from November 19, 1997 to December 18, 2004, he withdrew at least $55,025 from a joint account at JPMorgan Chase ("Chase account"); (2) in December 2002, he wrote a $100,000 check to himself for the purchase of a summer home from the Chase account; (3) in February 2000, he wrote and cashed a check for $58,000 for personal use from the Chase account; (4) from 1998 to 2004, he wrote checks amounting to at least $26,625 for his grandchildrens' tuition from the Chase account; (5) from December 1997 to 2004, he made ATM withdrawals of at least $86,000 from a joint account at the Bank of Lincolnwood ("Lincolnwood account");

---

[2] The court assumes familiarity with the background of this case as set out in its September 28, 2009 opinion but restates the original and amended allegations here for the convenience of the reader.

(6) in December 2002, he wrote an $80,000 check to himself towards a summer home purchase from the Lincolnwood account; (7) from 1998 to 2004, he wrote checks totaling at least $44,650 for his grandchildrens' tuition from the Lincolnwood account; and (8) he made other withdrawals or payments from the joint accounts benefitting himself and other family members aside from Leila. *Id.* ¶ 10. Leila further claims that Michael misappropriated stock and bond income rightfully owned by Max's estate to which Leila had rights as Max's heir. *Id.* ¶¶ 9, 12. Michael also allegedly received Erla's social security income and allowance from Max's estate without accounting for the checks. *Id.* ¶ 13.

The misappropriations, according to Leila, continued for over a year after Erla's death and deprived Leila of at least $300,000 and possibly upwards of $850,000. *Id.* ¶¶ 15–16. Michael claims that Erla orally authorized him to withdraw what money he needed from the joint accounts as long as he accounted to Leila. *Id.* ¶ 14. Leila alleges, however, that Michael admits he did not account to Leila. *Id.* Leila claims that Michael refused to provide her with documentation about the joint accounts upon her request in January 2004, leading her to first review joint account statements only in November 2004. *Id.* ¶ 17. Leila further learned about Michael's alleged misappropriation from a probate matter involving Erla's estate on May 19, 2006. *Id.* ¶ 18. She claims that the misappropriation started as early as 1987, leaving a nearly ten-year gap before the earliest documentation of alleged misappropriation that Leila is aware of, which is from November 1997. *Id.*

Finally, Leila alleges that Michael concealed his misappropriations with the help of Marcy, his wife, and other family members.[3] *Id.* ¶¶ 17–26. Leila claims that Michael

---

[3] The other family members except for Marcy are no longer defendants in this lawsuit.

3

convinced family members, including Marcy, to aid in the concealment of the alleged misappropriations during at least one meeting on May 2, 2004. *Id.* ¶¶ 22–26. Marcy allegedly knew of Michael's misappropriation and aided and abetted Michael in the concealment of the misappropriation as part of a scheme that involved ignoring Michael's misappropriation, allowing him to keep as much money as possible, concealing Michael's misappropriation and breach of fiduciary duty from Leila, allowing evidence to be lost or destroyed, and having other family members sue Leila and Marshall for their own alleged misappropriation in state court. *Id.* ¶¶ 22, 28–29. Leila also claims that Marcy benefitted financially from the alleged misappropriation via the summer home payments and use of cash misappropriated by Michael. *Id.* ¶ 30.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Allegations of fraud are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

4

9(b). This means that the plaintiff must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## DISCUSSION

**I.     Compliance with Rule 9(b)**

As in the original complaint, the heightened pleading standards of Rule 9(b) apply to the alleged misappropriations underlying Leila's claims. Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake, although malice, intent, and knowledge may be alleged generally. Though a breach of fiduciary duty does not necessarily indicate fraudulent behavior, Rule 9(b) applies to averments, not claims, of fraud. *Borsellino* v. *Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Thus, "[a] claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

Although Leila does not use the word "fraud" to describe the conduct at issue in the complaint, the actions alleged as the basis for the breach of fiduciary duty and other claims sound in fraud. Michael is accused of engaging in fraudulent conduct, specifically misappropriating funds, concealing the misappropriation and other material facts, allowing evidence of the misappropriation to be lost or destroyed, and allocating misappropriated funds to other family members. Therefore, Rule 9(b) applies to Michael's alleged misappropriation and the accompanying fraudulent conduct that underlies each count.

With her third amended complaint, Leila has sufficiently remedied the pleading defects identified by the court in its September 28, 2009 opinion as related to Michael's alleged misappropriation from the joint accounts. She has identified from which accounts money was improperly withdrawn (the Chase and Lincolnwood accounts), as well as specific time periods over which these withdrawals took place and the uses to which the withdrawals were put. She has also alleged that Michael did not account for the withdrawals to Leila contrary to Erla's wishes and that these withdrawals deprived her of at least $300,000 and possibly upwards of $850,000 that is rightfully hers.

Leila has not met the Rule 9(b) standard as her claim relates to Michael's alleged misappropriation of stock and bond income from Max's estate or Erla's social security and allowance income, however. There is no detail to provide Michael with notice of what stock and bond payments Leila claims were improperly converted. Unlike the specificity in describing misappropriation from the joint accounts, Leila only alleges that some of the proceeds from these stock and bond payments were used by Michael for some unknown personal benefit and does not allege that Michael's actions were against Max's or Erla's wishes. She further only claims that "at some point in time" Erla's monthly allowance from Max's trust and her social security checks were sent to Michael. Third Am. Compl. ¶ 13. While Leila claims that Michael has never accounted for all such checks, she has not alleged that they were put to an improper use or were to Leila's disadvantage. Because Leila has failed to plead this misappropriation with particularity, her claims may proceed only as they relate to the joint accounts.

## II. Specific Counts

### A. Count I: Breach of Fiduciary Duty

To prevail on her breach of fiduciary duty claim, Leila must establish that (1) Michael owed her a fiduciary duty, (2) Michael breached this duty, and (3) the breach proximately caused her injury. *Neade* v. *Portes,* 739 N.E.2d 496, 503, 193 Ill. 2d 433, 250 Ill. Dec. 733 (2000). The court need only consider whether Leila has sufficiently alleged the existence of a fiduciary duty. She contends that Michael owed her a fiduciary duty as co-executor of Erla's estate after Erla's death and prior to Erla's death by virtue of the trust and confidence Leila placed in her brother with respect to the joint accounts.

Michael owes no fiduciary duty to Leila as co-executor of Erla's estate as related to the joint accounts. Upon Erla's death, the joint accounts passed by right of survivorship directly to Leila and Michael, the remaining joint account holders, and thus remained outside of Erla's estate. *See Johnson* v. *La Grange State Bank*, 383 N.E.2d 185, 197, 73 Ill. 2d 342; 22 Ill. Dec. 709 (1978) ("[W]here joint accounts are concerned, the creation of the joint tenancy accounts . . . is sufficient to establish ownership in the survivor upon the death of the original owner, in absence of evidence to the contrary."); *Altieri* v. *Estate of Snyder*, 633 N.E.2d 711, 715, 262 Ill. App. 3d 427, 198 Ill. Dec. 870 (1992) ("[I]n the absence of contrary evidence the deposit agreement is sufficient to establish ownership in the survivor of the joint tenants."). Michael thus had no duty as co-executor to Leila for assets that were not part of Erla's estate. *See In re Estate of Lis*, 847 N.E.2d 879, 888, 365 Ill. App. 3d 1, 301 Ill. Dec. 869 (2006) (administrator of estate did not owe decedent's heirs a fiduciary duty because the assets in question were not part of decedent's estate).

Although usually arising by matter of law, a fiduciary relationship may also be found "when one person places trust and confidence in another who, as a result, gains influence and superiority over the other." *Kurtz* v. *Solomon*, 656 N.E.2d 184, 190, 275 Ill. App. 3d 643, 212 Ill. Dec. 31 (1995). Some factors that can be considered include "the degree of kinship, the disparity in age, health, mental condition, education, and business experience, and the degree of trust placed in the dominant party." *Id.* Michael claims that Leila has not sufficiently alleged a fiduciary relationship based on trust and confidence. But Leila has alleged that she placed trust and confidence in Michael to not misappropriate assets from the joint accounts as he is her brother, lived in closer proximity to their mother, and was as a joint tenant on the joint accounts. In addition, Leila claims Michael managed Erla's finances, was the only person to receive bank statements, and failed to disclose his withdrawals to Leila despite the fact that he had agreed to do so. A plausible inference can be drawn from these allegations that, due to Leila's trust and confidence in him, Michael assumed a dominant position over her (and Erla) regarding the joint accounts. This is enough to allege that Michael owed Leila a fiduciary duty upon which she can base her claim for breach.

### B. Count II: Constructive Fraud

A breach of fiduciary duty creates a presumption of constructive fraud, *LaSalle Nat'l Trust, N.A.* v. *Bd. of Dirs. of 1100 Lake Shore Drive Condo.*, 677 N.E.2d 1378, 1383, 287 Ill. App. 3d 449, 222 Ill. Dec. 579 (1997). The parties agree that Count II is derivative of Count I. Because the court has found that Leila has stated a valid claim for breach of fiduciary duty, the claim for constructive fraud survives as well.

### C. Count III: Fraudulent Concealment

To state a claim for fraudulent concealment, a plaintiff must allege:

> (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Schrager* v. *N. Cmty. Bank*, 767 N.E.2d 376, 384, 328 Ill. App. 3d 696, 262 Ill. Dec. 916 (2002) (citations omitted). In its September 28, 2009 opinion, the court identified the deficiencies in Leila's pleading of this count, namely that she did not allege that (1) Michael's concealment was intended to induce Leila to believe that no fraudulent conduct was occurring, (2) she relied on Michael's silence as a representation that he had not engaged in any fraudulent conduct, and (3) that she would have acted differently had she been aware of the material facts concealed from her. Following this court's direction, Leila has sufficiently addressed these deficiencies so as to withstand dismissal. Specifically, she has alleged that Michael intended to induce in her a false belief that no fraud was occurring by concealing financial records from Leila despite her January 2004 requests for documents and Erla's wishes that Michael account for his withdrawals to Leila.[4] The alleged fiduciary duty between Michael and Leila based on trust and confidence satisfies the duty to speak requirement. *See Connick* v. *Suzuki Motor Co.*, 675 N.E.2d 584, 593, 174 Ill. 2d 482, 221 Ill. Dec. 389 (1996). Leila also alleges that Michael colluded with Marcy and family members to prevent Leila from discovering

---

[4] Whether Leila should have looked into the issue well before January or November 2004 or whether she turned a blind eye to Michael's actions can be explored during discovery and in further motion practice.

transactions from the joint accounts. She claims to have relied on Michael's silence as to his actions and that she would have attempted to halt the conduct sooner had she been aware of it. While Michael seeks further detail, such detail is not required at this stage. The motion to dismiss Count III will be denied.

### D. Counts IV and IX: Unjust Enrichment

Unjust enrichment in Illinois requires a showing that the defendant unjustly retained a benefit to the plaintiff's detriment that "violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 137 Ill. Dec. 19 (1989). Unjust enrichment also requires that there be an independent basis that establishes a duty on the part of the defendant to act, and the defendant must have failed to abide by that duty. *Martis* v. *Grinnel Mut. Reinsurance Co.*, 905 N.E.2d 920, 928, 388 Ill. App. 3d 1017, 329 Ill. Dec. 82 (2009); *see also Lewis* v. *Lead Indus. Ass'n*, 793 N.E.2d 869, 877, 342 Ill. App. 3d 95, 276 Ill. Dec. 110 (2003).

As discussed above, Leila has sufficiently alleged with particularity that Michael withdrew funds from the joint accounts in breach of a fiduciary duty and at Leila's expense. Michael allegedly used these funds to enrich himself and his other family members through expenditures including a summer home and his grandchildrens' tuition. Additionally, Erla's request that Michael account to Leila for any withdrawals from the joint accounts—a request he allegedly admits he did not fulfill—makes it plausible that Erla intended that the funds in the joint accounts be split between Michael and Leila upon her death. Thus, Michael's alleged withdrawals after Erla's death could also violate

10

principles of equity and good conscience in addition to his fiduciary duty to Leila. The motion to dismiss Count IV will be denied.

Leila also seeks to recover from Marcy on a theory of unjust enrichment. She has not alleged, however, that Marcy had any duty to disclose information to her or had any type of fiduciary relationship with her. *See Martis*, 905 N.E.2d at 928 ("A plaintiff fails to state a cause of action for unjust enrichment absent an allegation of duty."). Because this required element of the claim of unjust enrichment against Marcy is lacking, Count IX will be dismissed.

### E. Count V: Conversion

Under Illinois law, Leila must satisfy four elements to state a claim for conversion: (1) her right to the subject property, (2) her unconditional right to immediate possession of the property, (3) her demand for possession, and (4) Michael's wrongful and unauthorized assumption of control or ownership over the property. *Loman* v. *Freeman*, 890 N.E.2d 446, 461, 229 Ill. 2d 104, 321 Ill. Dec. 724 (2008). When money is at issue, an action for conversion may be maintained "where the converted funds are capable of being described, identified, or segregated in a specific manner." *Bill Marek's The Competitive Edge, Inc.* v. *Mickelson Grp., Inc.*, 806 N.E.2d 280, 287, 346 Ill. App. 3d 996, 282 Ill. Dec. 305 (2004). A claim for conversion may also be brought against a defendant who refuses to distribute a plaintiff's rightful share of bank account funds. *See Roderick Dev. Inv. Co.* v. *Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1138, 282 Ill. App. 3d 1052, 218 Ill. Dec. 297 (1996) (court found conversion where a bank refused to distribute to plaintiff his share of funds deriving from a trust account).

Leila describes and identifies withdrawals from joint accounts in which she alleges Michael misappropriated funds. As a joint account holder, she has an immediate right to all the funds in the joint account. 765 Ill. Comp. Stat. 1005/2(a) ("When a deposit in any bank . . . shall hereafter be made in the names of 2 or more persons payable to them when the account is opened or thereafter, the deposit . . . may be paid to any one of those persons whether the other or others be living or not . . . ."); *see Fisher* v. *State Bank of Annawan*, 643 N.E.2d 811, 813, 163 Ill. 2d 177, 205 Ill. Dec. 520 (1994); *In re Tucker*, 430 B.R. 499, 502 (Bankr. N.D. Ill. 2010) ("Under Illinois law, there is a presumption that each owner of a joint account owns all funds in that account . . . ."). Leila claims that Michael wrongfully assumed control over these funds and denied Leila's demands for her rightful share of the funds. But, "a party to a joint bank account may withdraw and dispense with all of the funds from that account, and neither he nor his estate is liable to the other joint depositors for the withdrawn funds." *In re Estate of Vogel*, 684 N.E.2d 1035, 1038, 291 Ill. App. 3d 1044, 226 Ill. Dec. 39 (1997). Thus, absent some other agreement, Michael's withdrawals cannot be said to have been wrongful. *See id.* at 1039–40. Leila has at least sufficiently alleged that there was an agreement outside of the bounds of the joint account that Michael was not to withdraw funds from the joint account without Erla's permission to do so and without accounting to Leila for such withdrawals. *See* Third Am. Compl. ¶¶ 14, 16. Taking these allegations as true at this stage, Leila has stated a claim for conversion.

### F. Count VI: Equitable Accounting

In order to state a claim for equitable accounting, a plaintiff must allege the absence of an adequate remedy at law and "at least one of the following: (1) a breach of a

fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Kempner Mobile Elecs., Inc.* v. *Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005) (citing *Mann* v. *Kemper Fin. Cos.*, 618 N.E.2d 317, 327, 247 Ill. App. 3d 966, 187 Ill. Dec. 726 (1992)). "Only if the accounting claim is based upon a breach of fiduciary duty, however, may a plaintiff proceed without alleging the absence of an adequate remedy at law." *Fire 'Em Up, Inc.* v. *Technocarb Equip. (2004) Ltd.*, No. 10 C 8050, 2011 WL 2582396, at *6 (N.D. Ill. June 27, 2011) (citing *Mann*, 618 N.E.2d at 327).

Although Leila seeks various remedies at law, she is allowed to plead in the alternative that she lacks such an adequate remedy. Fed. R. Civ. P. 8(d)(2)–(3); *Waldock ex rel. John H. Waldock Trust* v. *M.J. Select Global, Ltd.*, No. 03 C 5293, 2004 WL 2278549, at *6 (N.D. Ill. Oct. 7, 2004). Even had she not done so, her claim for an accounting could proceed as she bases it in part on Michael's alleged breach of fiduciary duty. *See Mann*, 618 N.E.2d at 327. Leila has also alleged that she needs discovery because the alleged misappropriation occurred over a period of years involving multiple accounts and has been concealed from her. Although Michael claims that Leila cannot need more discovery "in light of the exhaustive discovery conducted in the state court proceedings," Reply at 10, the court, which is not privy to what has occurred in state court, is not in a position to make this determination at this time. Thus, the motion to dismiss Count VI will be denied.

### G. Count VII: Joint Tenancy Act Violation

Leila alleges that Michael violated section 4 of the JTA, which provides:

> If any person shall assume and exercise exclusive
> ownership over, or take away, destroy, lessen in value, or

13

>otherwise injure or abuse any property held in joint tenancy
>or tenancy in common, the party aggrieved shall have his
>civil action for the injury in the same manner as he would
>have if such joint tenancy or tenancy in common did not exist.

765 Ill. Comp. Stat. 1005/4. Leila has alleged that Michael assumed exclusive control over the joint accounts and by withdrawing money for his own uses, lessened the value of the joint accounts that should be rightfully split between the two parties. Michael claims that Count VII is barred by the statute of limitations, fails to include a necessary party, and fails to state a claim.

### i.     Statute of Limitations

The JTA is subject to a five-year statute of limitations. 735 Ill. Comp. Stat. 5/13-205. As Leila only raised a JTA claim in her third amended complaint and the conduct to which it refers occurred more than five years before the claim was asserted, the court must determine whether the JTA claim relates back to the original filing of Leila's complaint. Illinois law regarding relation back applies in this situation. *Brengettcy* v. *Horton*, No. 01 C 197, 2006 WL 1793570, at *10 (N.D. Ill. May 5, 2006) ("Illinois law governs the substantive issues under the relation back doctrine."); *see Diaz* v. *Shallbetter*, 984 F.2d 850, 853–54 (7th Cir. 1993) ("[W]hen trying to determine whether 'relation back' is essential to make the complaint timely, we must refer to the law defining the period of limitations."). Under Illinois law, the JTA claim is not time barred if the period in which to file a claim under the JTA "had not expired when the original pleading was filed" and the amended complaint "grew out of the same transaction or occurrence set up in the original pleading." 735 Ill. Comp. Stat. 5/2-616(b). Leila alleges that Michael's misappropriation occurred through November 2004. She filed her original complaint on September 30, 2008. That complaint outlined the same transactions that constituted the

14

alleged misappropriation underlying Count VII. While Leila has added more detail about those transactions in the third amended complaint, the conduct underlying the JTA claim remains fundamentally the same as the transactions laid out in the original complaint. The JTA claim is just an additional theory of recovery that Leila has chosen to pursue. Therefore, conduct arising after September 30, 2003 is not barred by the statute of limitations because it occurred within five years of when Leila filed the original complaint.

Leila argues the discovery rule, as well as the doctrines of equitable tolling, equitable estoppel, and fraudulent concealment save her JTA claim for conduct occurring before September 30, 2003. The Illinois Code of Civil Procedure provides that fraudulent concealment tolls the statute of limitations so that a claim may be brought within five years after a plaintiff discovers that she has a cause of action that had been fraudulently concealed from her. 735 Ill. Comp. Stat. 5/13-215; *Wisniewski* v *Diocese of Belleville*, 943 N.E.2d 43, 72–73, 406 Ill. App. 3d 1119, 347 Ill. Dec. 753 (2011). While Leila has not developed the argument as it relates to tolling of the statute of limitations in detail, at this stage, her pleading of fraudulent concealment satisfies the court that she should be allowed to proceed on her JTA claim for the entire spectrum of alleged misappropriation from the joint bank accounts. Michael may assert the statute of limitations as an affirmative defense, however, to challenge whether fraudulent concealment or any other equitable doctrine warrants tolling the statute of limitations on this claim.

### ii. Necessary Party

Michael also argues that the JTA claim should be dismissed because Erla's estate is a necessary party to the suit based on Erla's status as a joint tenant. *See* Fed. R. Civ. P. 19(a); *Guth* v. *Texas Company,* 64 F. Supp. 733, 734 (N.D. Ill. 1946), *rev'd on other grounds*, 155 F.2d 563 (7th Cir. 1946) ("One tenant in common can sue for the recovery of the property, but one tenant in common cannot sue for damages to the property. It then becomes a joint action, and all of the parties in interest must join."). The JTA, however, states that "the party aggrieved shall have his civil action for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist." Leila only claims abuse of her interests as an aggrieved party. It is not clear that, in the estate's absence, the court cannot afford complete relief between Leila and Michael, especially as Erla's interest in the accounts passed to them at the time of her death. There is no indication that Erla's estate claims an interest in the joint accounts. As Erla's estate does not appear to qualify as a necessary party under Federal Rule of Civil Procedure 19(a), the court will not dismiss the JTA claim. If it becomes apparent through discovery, however, that Erla's estate does assert an interest in the funds at issue, the court may reconsider whether it should be joined in the action.

### iii. Sufficiency of the Allegations

Michael argues that this claim, like the others, should be dismissed because Leila has failed to set forth with particularity the acts that Michael took that violated the JTA. The court has already determined that Leila has sufficiently pleaded fraud with specificity. As the JTA claim is based on this same conduct, Michael's contention fails.

### H. Count VIII: Aiding and Abetting against Marcy

Leila alleges that Marcy aided and abetted Michael in carrying out his alleged misappropriation. To state a claim for aiding and abetting, "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Thornwood, Inc.* v. *Jenner & Block*, 799 N.E.2d 756, 767, 344 Ill. App. 3d 15, 278 Ill. Dec. 891 (2003) (quoting *Wolf* v. *Liberis*, 505 N.E.2d 1202, 1208, 153 Ill. App. 3d 488, 106 Ill. Dec. 411 (1987)). Leila sufficiently alleges that Marcy knew of Michael's misappropriation prior to Erla's death, assisted in Michael's misappropriation by aiding in a lawsuit filed against Leila to distract her from learning of Michael's misconduct, and agreed to a scheme along with other family members to conceal the misappropriation from Leila. Therefore, the motion to dismiss Count VIII will be denied.

### CONCLUSION AND ORDER

For the foregoing reasons, Michael's motion to dismiss [#96] is denied. Marcy's motion to dismiss [#97] is granted as to Count IX and denied as to Count VIII. Michael and Marcy have until August 9, 2011 to answer the complaint.

Dated: July 26, 2011

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge